UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

Michael S. Lane,

                    Petitioner,

vs.                                    Case No.  5:10-cv-359-Oc-29PRL

Secretary, Florida Department of
Corrections  and Florida Attorney
General,

                    Respondents.

_____


## OPINION AND ORDER

### I. Status

Petitioner Michael S. Lane has pending before the Court a *pro se* Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. #1, Petition).  The Petition challenges Lanes's March 27, 2007, judgment of conviction, after a jury trial, for: (Count I) attempted trafficking in methamphetamine; (Count II) attempted manufacture of methamphetamine; (Count III) possession of listed chemical; (Count IV) possession of cannabis (20 grams of less); and (Count V) possession of paraphernalia, entered by the Fifth Judicial Circuit Court in and for Citrus County, Florida.  Petition at 1.  Lane was sentenced to 15 years imprisonment on Count I, a concurrent sentence of five years imprisonment on Count II, a consecutive seven year sentence on Count III, and time served for the misdemeanors in Counts IV and V.  On November 18, 2008, Lane's convictions and sentence were affirmed without opinion.  <u>Lane v.</u>

State, 995 So. 2d 980 (Fla. 5th DCA 2008).  Respondent filed a
Response (Doc. #6, Response) to the Petition, and submitted
exhibits in support thereof (Doc. #7, Exhs. A-J).  Lane filed a
Reply (Doc. #8, Reply).  This matter ripe for review.

## II. Applicable § 2254 Law

### A.  Only Federal Questions Cognizable

A federal court only may entertain an application for a writ
of habeas corpus from a state prisoner who claims his custody
violates the "Constitution or the laws or treaties of the United
States."  28 U.S.C. § 2254(a).  "The writ of habeas corpus was not
enacted to enforce State-created rights."  Cabberiza v. Moore, 217
F.3d 1329, 1333 (11th Cir. 2000)(citation and quotation marks
omitted); Estelle v. McGuire, 502 U.S. 62, 68 (1991); Carrizales v.
Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).  In particular,
"[a] state's interpretation of its own laws or rules provides no
basis for federal habeas corpus relief, since no question of a
constitutional nature is involved."  McCullough v. Singletary, 967
F.2d 530, 535 (11th Cir. 1992).  "Federal courts entertaining
petitions for writs of habeas corpus must follow the state court's
interpretation of a state law absent a constitutional violation."
Hunt v. Tucker, 93 F.3d 735, 737 (11th Cir. 1996); Callahan v.
Campbell, 427 F.3d 897, 932 (11th Cir. 2005).  Consequently, "a
challenge to a state collateral proceeding does not undermine the
legality of the detention or imprisonment - i.e., the conviction

itself - and thus habeas relief is not an appropriate remedy."
<u>Alston v. Dep't of Corr.</u>, 610 F.3d 1318, 1325-26 (11th Cir. 2010)(internal quotation and citation omitted).  Similarly, a claim that petitioner's federal rights have been violated because state officials failed to correctly apply state law is merely a state law claim "couched in terms" of a federal claim, and fails to state a claim upon which relief may be granted by habeas corpus.  <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1989).

### B.  Exhaustion and Procedural Default

A federal court may only review an issue under § 2254 if petitioner first afforded the state courts an adequate opportunity to address that issue.  28 U.S.C. § 2254(b)(1)(A).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004)(internal citations and quotations omitted).  This imposes a "total exhaustion" requirement in which all the federal issues must have first been presented to the state courts.  <u>Rhines v. Weber</u>, 544 U.S. 269, 274 (2005).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  <u>O'Sullivan v. Boerckel</u>, 526

U.S. 838, 842 (1999).  See also Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Duncan v. Henry, 513 U.S. 364, 365 (1995)(stating "exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'"). Additionally, in articulating a factual basis in support of a claim for relief, a petitioner must have also alleged the factual predicate to the state court. Kelley v. Sec'y for Dep't of Corrs., 377 F.3d 1317, 1343–44 (11th Cir. 2004)(noting that petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petition if they did not first raise them in the state courts).

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . . . ." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001). A procedural default for failing to exhaust state court

remedies will only be excused in two narrow circumstances.  First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error.  House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d at 1190.  Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice.  House v. Bell, 547 U.S. 518, 536 (2006); Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

**C.  Deferential Review Required By AEDPA**

Lane filed his timely[1] Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Consequently, post-AEDPA law governs this action.  Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007);  Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).  Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[1]Respondent concedes, and the Court agrees, that the Petition is timely filed.  Response at 6.

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). <u>Cullen v. Pinholster</u>, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." <u>Id.</u> (internal quotations and citations omitted). <u>See also Harrington v. Richter</u>, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." <u>Childers v. Floyd</u>, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. <u>Id.</u>; <u>see also Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." <u>Childers v. Floyd</u>, 642 F.3d at 969 (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision). "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012)(internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 131 S. Ct. 770. Id. First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision. Id. (citations omitted). Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review." Stephens v. Hall,

407 F.3d 1195, 1201 (11th Cir. 2005).  The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits."  <u>Cullen</u>, 131 S. Ct. at 1398.  Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order.  <u>Id.</u>

### D.  Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  <u>Newland v. Hall</u>, 527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.  <u>Newland</u>, 527 F.3d at 1184.  In <u>Strickland</u>, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, <u>i.e.</u>, "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, <u>i.e.</u>, there was

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. ___, 130 S. Ct. 13, 16 (2009); Cullen v. Pinholster, 131 S.Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 130 S. Ct. at 17 (internal quotations and citations omitted).  It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.  Id.  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.),

cert. denied sub nom. Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

### III.  Findings of Fact and Conclusions of Law

#### A. Evidentiary Hearing

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court.  Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007).  Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court.  Schriro, 127 S. Ct. at 1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

#### B.  Grounds for Relief

The Petition raises six claims for relief: (1) Petitioner's multiple convictions violate his rights under the Double Jeopardy

Clause; (2) trial counsel was ineffective for conducting an inadequate investigation; (3) trial counsel was ineffective for failing to argue all possible defenses; (4) trial counsel was ineffective for coercing the Petitioner into not testifying; (5) trial counsel was ineffective for failing to convey a plea offer; and, (6) the prosecutor engaged in misconduct by lying at the evidentiary hearing. See generally Petition.

At the outset the Court notes that the Petition on its face is deficient. For instance, Petitioner fails to identify any facts in support of several of his claims. Federal habeas petitioners are required to fact plead their claims. McFarland v. Scott, 512 U.S. 849, 856 (1994)("Habeas corpus petitions must meet heightened pleading requirements...." (citing 28 U.S.C. § 2254 Rule 2(c)). "[T]he petition must 'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'" Mayle v. Felix, 545 U.S. 644, 655 (2005)(quoting Rule 2(c) of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. § 2254)).

Additionally, federal habeas petitioners must argue their claims. Fils v. City of Aventura, 647 F.3d 1272, 1284 (11th Cir. 2011)("district courts cannot concoct or resurrect arguments neither made nor advanced by parties."). Here, Petitioner fails to identify any errors in the state court's factual findings, nor does Petitioner allege, yet alone "show that the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. ___, 131 S.Ct. 770, 786-87 (2011). Nonetheless, in an abundance of caution, the Court will address each of the grounds for relief.

**Ground One**

Petitioner contends that his convictions for attempted trafficking, attempted manufacturing of methamphetamine, and possession of pseudoephedrine and/or anhydrous with intent to manufacture, violates his state and federal double jeopardy prohibitions. Petition at 5. In support, Petitioner vaguely states that "all convictions stem from a single attempted possession" charge. Id. To the extent discernable, Petitioner challenges his three felony counts (Counts I, II, and III) as violating double jeopardy. Petitioner raised a similar ground on direct appeal. Exh. C. As noted, *supra*, the appellate affirmed petitioner's convictions and sentence. Exh. D. The Court will consider the federal dimension of this ground only to the extent raised on direct appeal. Therein, Petitioner cited to Blockburger v. United States, 284 U.S. 299 (1932) in support of his federal double jeopardy argument. Exh. C at 10.

The federal Double Jeopardy Clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and, (3) multiple punishments for the same

offense.    North Carolina v. Pearce, 395 U.S. 711, 717 (1969).

Here, it appears that Petitioner is arguing that he was subjected

to "multiple punishments for the same offense"  because his case

involves only one prosecution in case number 2005-CF-000810-A.  See

United States v. Kaiser, 893 F.2d 1300, 1304 (11th Cir. 1990).

> Where the same conduct violates two statutory provisions,
> the first step in the double jeopardy analysis is to
> determine whether the legislature . . . intended that
> each   violation   be   a   separate   offense.    If   the
> legislature's intent is unclear, we then apply the "same
> elements" test established in Blockburger . . . Under
> this test, two offenses are different for the purposes of
> double jeopardy analysis if each requires proof of an
> additional  fact  which  the  other  does  not.

United   States   v.   Smith,   532   F.3d   1125,   1128   (11th   Cir.

2008)(internal  citations  and  quotations  omitted).    Florida  has

essentially  adopted  the  Blockburger  test  as  the  Legislature's

intent.   See Turner v. State, 661 So.2d 93, 94 (Fla. 1st DCA,

1995).[2]

---

[2]Fla. Stat. § 775.021(4) provides:

(a) Whoever, in the course of one criminal transaction or
episode, commits an act or acts which constitute one or
more  separate  criminal  offenses,  upon  conviction  and
adjudication of guilt, shall be sentenced separately for
each criminal offense; and the sentencing judge may order
the sentences to be served concurrently or consecutively.
For  the  purposes  of  this  subsection,  offenses  are
separate if each offense requires proof of an element
that the other does not, without regard to the accusatory
pleading or the proof adduced at trial.

(b)  The  intent  of  the  Legislature  is  to  convict  and
sentence  for  each  criminal  offense  committed  in  the
course of one criminal episode or transaction and not to

(continued...)

-13-

The record reveals that, in addition to the two misdemeanor counts (counts IV and V), Petitioner was charged by a Second Amended Information with the following three felony counts:

Count I
Trafficking in Methamphetamine (F1)
[Lane] did unlawfully and knowingly sell, deliver, of have in his possession a controlled substance, to-wit: Methamphetamine, or a mixture containing Methamphetamine, in an amount of fourteen (14) grams or more, but less than twenty-eight (28) grams in violation of Fla. Stat. § 893.135(1)(f) and 893.03(2)(c);

Count II
Manufacture of Methamphetamine (F2)
[Lane] did unlawfully willfully manufacture or possess with intent to manufacture of cause to be manufactured, a controlled substance, to-wit: Methamphetamine, in violation of Fla. Stat. § 893.13(1)(a) and 893.03(2)(c)4;

Count III
Possession of Listed Chemical (F2)
[Lane] did knowingly or intentionally possess a listed chemical, to-wit: Pseudoephedrine and/or Anhydrous Ammonia, with the intent to unlawfully manufacture a controlled substance, or did knowingly possess or distribute said listed chemical knowing or having reasonable cause to believe that said listed chemical will be used to unlawfully manufacture a controlled substance in violation of Fla. Stat. § 893.149.

---

[2](...continued)
allow the principle of lenity as set forth in subsection (1) to determine legislative intent.
Exceptions to this rule of construction are:

1. Offenses which require identical elements of proof.

2. Offenses which are degrees of the same offense as provided by statute.

3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

Fla. Stat. § 775.021(4).

Exh. A.  As noted, Petitioner was convicted of the lesser included offenses of attempted trafficking and attempted manufacturing on Counts I and II, and found guilty of the possession charge in Count III.  Exh. B at 405-406.

Based upon the record, the Court finds there is no double jeopardy violation.  Here it appears that the Florida Legislature intended each violation to be a separate offense.  Petitioner was charged with three distinct crimes: *trafficking* in methamphetamine, *manufacture* of methamphetamine, and *possession of a listed chemical*.  Exh. A (emphasis added).  Each of the offenses are governed by a different Florida statute:  § 893.135(1)(f), § 893.13(1)(a)1, and § 893.149.  Id.  Further, as evidenced by the jury instructions, each crime necessitated a finding of a different element by the jury, i.e., selling a certain amount of methamphetamine, manufacturing the methamphetamine, and possessing certain other banned chemicals.  Exh. B at p. 371-77.

Petitioner has not shown that the state court's rejection of this claim on the merits has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d).  Consequently, the Court denies Petitioner relief on Ground One.

**Grounds Two and Three**

Grounds Two and Three are interrelated and will be discussed together.  In Ground Two, Petitioner claims that trial counsel was

ineffective in failing to perform an adequate investigation. Petition at 6. In support, Petitioner states that he "provided counsel with a list of witnesses" who "would have testified Defendant did not live on the property where contraband was found." Id. Notably, in the Petition, Petitioner does not identify by name the witnesses who were allegedly identified on the "list" he provided to counsel. Id. Petitioner also states that Officer John Carlise was never deposed and claims his testimony "would have revealed Defendant's complete denial of ownership" and contradicted the Detective's testimony that Defendant confessed. Id. Significantly, Petitioner does not allege that the unidentified witnesses or Officer Carlise were available and willing to testify. Id. Further, Petitioner does not provide affidavits or statements from any of the witnesses as to what would be the substance of their testimony. Id. It appears that Petitioner contends that the various witnesses would have testified that Petitioner did not "live" at the property where the contraband was found.

As Ground Three, Petitioner contends that because counsel did not adequately interview potential witnesses, counsel was also ineffective for failing "to use/argue all possible defenses during trial." Petition at 8. In support, Petitioner claims that had counsel interviewed the potential witnesses, he could have established and proved that Defendant "did not have dominion and control over [the] illegal items found at a place where Defendant did not reside," and thus, the counsel could have proven that

Petitioner did not have "actual or constructive possession."   Id.
Petitioner raised similar grounds as ground one and two in his Rule
3.850 motion.   Exh. D at 3-4.

The post conviction court, in evaluating all of Petitioner's
ineffectiveness of counsel claims, cited to the Florida Supreme
Court's decision in Maxwell v. Wainwright, 490 So. 2d 927, 932
(Fla. 1986), which cites to and incorporates Strickland's two-prong
standard.   Exh. H at 24.   The post conviction court noted that an
attorney's performance is not to be evaluated using "hindsight,"
but is to be evaluated "from the counsel's perspective at the
time."   Id.   In denying relief on these two grounds, the post
conviction court, in pertinent part, held:

> The Defendant's first claim is that his counsel was
> ineffective for failure to investigate.   More
> specifically, the Defendant points to witnesses who
> either overheard the Defendant say or who would have
> testified that the Defendant did not live at the
> residence where he was arrested.   The Defendant's second
> claim is that his counsel was ineffective for failure to
> argue that the State had not proven actual or
> constructive possession of the illegal substances.
>
> These claims are conclusively refuted by the record.
> While it is true that the Defendant did not own the house
> where he was arrested, he did own the camper in the yard
> and was inside the camper for which he consented to a
> search.   Upon the consented search, the Detective found
> the equipment necessary to produce illegal substances.
> (See attached deposition of Detective Bentz.)   Further,
> the deposition and probable cause affidavit reveals that
> the Defendant admitted he had used the equipment to
> produce methamphetamine. (See id.; see also Probable
> Cause Affidavit.)   Accordingly, the Defendant's first two
> claims are without merit.

Exh. H at 25.   The appellate court *per curiam* affirmed.   Exh. J; <u>Lane v. State</u>, 27 So. 3d 42 (Fla. 5th DCA 2010).

The state courts' rejection of this claim on the merits is supported by the record.  In particular, the record reflects that the police went to a house located at 10055 Day Lily Terrace in Crystal River in connection with another investigation when they encountered Petitioner inside a small travel trailer located next to the driveway on the north side of the residence.  Exh. H at 32. Petitioner permitted the police officer to go inside the trailer where the contraband was located. <u>Id.</u> at 42-43.   Petitioner admitted that the items were for manufacturing methamphetamine. <u>Id.</u> at 44.   Petitioner told the officer he owned the trailer and the officer located a handwritten bill of sale stating "I, Paul Schott, received $1,500 from Michael Lane for payment for a Dodge motor home paid in full."  <u>Id.</u> 44.   Further, Petitioner has not shown that the state court's rejection of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d).  Consequently, the Court denies Petitioner relief on Grounds Two and Three.

**Ground Four**

Petitioner claims that trial "counsel coerced Defendant not to testify during trial."  Petition at 9.  In support, Petitioner claims that counsel "misadvised Defendant that his testimony would

-18-

only cause harm and coerced him to avoid testifying." <u>Id.</u>
Petitioner states that, after trial, counsel sent him a letter
advising him that "his testimony could have made the outcome
different." <u>Id.</u>

The State correctly objects that this claim, as presently
phrased, is unexhausted in state court. Response at 7. More
specifically, in Petitioner's Rule 3.850 motion, Petitioner raised
the following claim:

> Defense counsel prejudiced the Defendant by advising him
> that his testimony during trial would harm rather than
> benefit him.

Exh. E at 4. In support of this claim, Petitioner stated:

> Had defendant been aware of the fact that his testimony
> was required to prove his innocence and to give the
> jurors all possible details about the incident, he
> certainly would have testified as part of the defense.
> But, Defendant's counsel did not explain how important
> his testimony would have for the jury to understand the
> Defendant's situation.
>
> Instead, counsel advised the Defendant that his testimony
> would not only be unnecessary to the defense, but that it
> would in fact harm the defense.

<u>Id.</u> The post conviction court summarily denied Petitioner relief
on his claim as stated in his Rule 3.850 motion, as follows:

> The Defendant's third claim is that his counsel was
> ineffective for advising him that testifying on his own
> behalf would be harmful to his defense. The Defendant
> claims that his testimony would have helped his defense.
> This claim is without merit as a matter of law. Post
> conviction relief law is clear that "strategic choices
> made after a thorough investigation of the law and facts
> relevant to plausible options are virtually
> unchallengeable." <u>Strickland</u>, 466 U.S. at 690. Here,
> defense counsel made a strategic choice to stress that

the Defendant should not testify.  Moreover, the
Defendant had admitted to Detective Bentz that he owned
the camper, was aware of the equipment in the trailer,
and had recently used the equipment to produce
methamphetamine.  Thus, this Court fails to see how the
Defendant's testimony could have been helpful to his
defense.  In fact, the claim is "inherently incredible."
See McLin v. State, 827 So. 2d 948, 955 (Fla.
2002)(recognizing that an evidentiary hearing is not
required when the allegations are "inherently
incredible").

Exh. H at 25-26.  The appellate court *per curiam* affirmed.  Exh. J.

At the outset, Petitioner provides no facts in support of his
claim that counsel "coerced" him into not testifying.  See
generally Petition.  Nor does Petitioner identify what testimony he
would have proffered had he testified.  Id.  Nonetheless, based
upon the record, it is clear that Petitioner did not allege a claim
of coercion by trial counsel below.  No where in his Rule 3.850
motion, does Petitioner mention the word "coerce" or suggest that
counsel "coerced" him into not testifying.  See generally Id.
Consequently, the post conviction court was not afforded an
opportunity to rule on this aspect of Petitioner's claim.  The
Supreme Court requires "a state prisoner to present the state
courts with the same claim he urges upon the federal courts."
Picard v. Connor, 404 U.S. 270, 276 (1971).  To satisfy the
exhaustion and fair presentation requirements, the Eleventh Circuit
has stated, "we do require that a petitioner presented his claims
to the state court such that a reasonable reader would understand
each claim's particular legal basis and specific factual

foundation." <u>Williams v. Allen</u>, 542 F.3d 1326, 1345 (11th Cir. 2008)(citation omitted). After careful review of Petitioner's Rule 3.850 motion, <u>see</u> Exh. E at 4, the Court finds that a reasonable judicial officer would not have understood Petitioner to be predicating his ineffective assistance claim on an alleged coercion by trial counsel. As such, this aspect of Petitioner's ineffective assistance claim was not fairly presented to the state appellate courts, is not exhausted, and is not cognizable in his § 2254 Petition. Thus, the Court dismisses Ground Four as unexhausted and procedurally barred.

**Ground Five**

Petitioner faults trial counsel for failing "to convey a favorable plea offer." Petition at 11. In support, Petitioner states that, on August 5, 2005, the state attorney made a plea offer of five-years imprisonment, followed by five years of probation, that was never conveyed to him by counsel. <u>Id.</u> Petitioner raised this claim as ground four in his Rule 3.850 motion, Exh. E at 5, and, after the State was ordered to respond to the claim, Exh. H at 26, Petitioner was afforded an evidentiary hearing to develop the factual underpinnings of this claim. Exh. G. An evidentiary hearing was held on May 21, 2009, at which Petitioner was represented by counsel. <u>Id.</u>

On June 8, 2009, the post conviction court entered a written order denying Petitioner relief on this claim finding as follows:

3.    As to the aspects of Defendant's motion that allege ineffective assistance of counsel, this Court . . . found that the fourth allegation, that counsel was ineffective for failure to convey a favorable plea offer to Defendant, could not be conclusively refuted by the record.  A review of the record reveals that such a plea offer was signed by the Assistant State Attorney, but there is no indication in the record as to whether this offer was conveyed to Defendant or why it was not accepted.  Further, the date the Assistant State Attorney signed the agreement is not clear, so this Court cannot ascertain who the defense counsel was at the time. Accordingly, the Court held an evidentiary hearing on May 21, 2009.

4.    Present before the Court on May 21, 2009 were Defendant Michael S. Lane, Charles P. Vaughn, Esquire, representing Defendant, and Assistant State Attorney Julia Metts.  After being placed under oath, Defendant testified that he had four attorneys — Daniel Lewan, Eric Schultz, Roxanne Dean and Robert Christensen, that he never saw the State's first plea offer that was for five years incarceration followed by five years probation, and that he did not know about the revocation of said offer. He further testified that, had he known of the offer, he would have accepted it and would not have gone to trial. There was no cross examination.

5.    The State then called Attorney Robert Christensen who was placed under oath and testified that he had been appointed to represent Defendant on three cases, that there was a five year plea offer only for one case, 2005-CF-810, and that the State said it had been revoked.  He further testified that the State refused to bifurcate Defendant's sex charges from his drug charges. On cross examination, Mr. Christensen testified that he could not recall if he had spoken to Defendant about the revoked offer, that Defendant wanted a separate plea for the drug charges and that [he] did not discuss the case with the previous attorneys.

6.    The State then called Attorney Roxanne Dean who was placed under oath and testified that she had represented Defendant for about one month when she received discovery and realized there was a conflict with one of her other cases concerning a co-defendant.  On cross examination, Ms. Dean testified that she had been on Defendant's case for one month.

7.   The State then called Assistant State Attorney Deborah Hunt who was placed under oath and testified that she had filed the Information and handled all three of Defendant's cases when she had been assigned to the Office of the State Attorney in Citrus County. She further testified that she had conducted discovery and made a plea offer in case 2005-CF-810 but that she immediately revoked the offer after sex charges were filed against Defendant in another case.   On cross examination, Ms. Hunt testified that she filed a plea offer in case 2005-CF-810 on August 10, 2005, but revoked it in October, 2005, when the sex charges where filed.

8.   In closing the Defense argued that it was not Defendant's fault that he had four attorneys, that there had been a combination of errors resulting in ineffective assistance of counsel on both sides and that Defendant would have taken the State's offer if he had been made aware of it.   In closing the State argued that the Defendant had originally stated that he was going to retain private counsel in case 2008-CF-810 in August, 2005, and that the State could revoke an offer at any time before acceptance by the Court.

9.   This Court finds that there was no valid plea offer extended by the State just prior to trial, that an offer had been extended by Ms. Hunt on only one of Defendant's cases, and had been revoked when the sex charges were filed against Defendant, and that the record conclusively refutes Defendant's allegations of ineffective assistance of counsel.

Exh. H at 70-72.  Petitioner, represented by the Public Defenders Office filed an <u>Anders</u>[3] brief on appeal.  Exh. I.  After notice, Petitioner filed a pro se brief in which he alleged that the prosecutor, Ms. Hunt, "prevaricated a story of revoking the plea offer."  <u>Id.</u> at 10-11.  The appellate court *per curiam* affirmed the post conviction court's order denying Petitioner relief on his Rule 3.850 motion.  Exh. J.

---

[3]<u>Anders v. California</u>, 386 U.S. 738 (1967).

The record reflects that trial counsel, Mr. Christensen, was appointed to represent Petitioner on three cases, the underlying trafficking methamphetamine, a sex charge involving a child, and a sale case sometime in March 2006.  Exh. G at 17-19.  Mr. Christensen testified that when he received discovery he discovered a plea offer bearing only the case number for the underlying case. Id. at 18.  Mr. Christensen telephoned Ms. Hunt, who was the prosecutor and was advised that the plea offer had been revoked. Id.  Mr. Christensen testified that Ms. Hunt was insistent on trying the underlying case first before Petitioner's other cases, including the sex case, and the State was only willing to consider a plea deal that included the sex case.  Id. at 20.  The plea offer prior to trial was twenty five years incarceration, which was unacceptable to the Petitioner.  Id. at 20-21.  The prosecutor, Ms. Hunt, testified that she most likely revoked the plea offer generated on August 10, 2005 on October 5, 2005, when she filed the unrelated sexual offense case against Petitioner.  Id. at 35-36, 38.  The prosecutor stated it was her intent to have the trafficking case tried first in order to try to spare the victim from having to testify in the sex case.  Id. at 37.  Based upon the testimony, the post conviction court deemed the state prosecutor's testimony reliable and found that the plea offer had been revoked.  Further, there is no evidence that, even if the offer had not been revoked, the trial court would have accepted the

plea offer.  Indeed, a defendant does not have an absolute right to have a guilty plea accepted, and the trial court can reject a plea in the exercise of its sound judicial discretion.  <u>Santobello v. New York</u>, 404 U.S. 257, 261-62 (1971).  The Court finds the state courts' rejection of this claim is supported by the record.

Petitioner has not shown that the state court's rejection of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d).  Consequently, the Court denies Petitioner relief on Ground Five.

**Ground Six**

Petitioner claims that the state prosecutor committed misconduct.  Petition at 12.  In support, Petitioner states that during the evidentiary hearing, the state prosecutor falsely testified under oath that she had revoked the plea offer.  <u>Id.</u> Respondent submits that Ground Six was not properly exhausted in the state courts and now is procedurally barred.  Response at 4, 7. Respondent points out that, although Petitioner argued in the appeal of the denial of his Rule 3.850 motion that the prosecutor's testimony was fabricated, Petitioner did not include any allegations that the alleged misconduct rose to a federal constitutional violation.  <u>Id.</u> Petitioner concedes that he did not exhaust this ground for relief in the State court.  Petition at 13,

¶13.  In his Reply, Petitioner argues that he did not exhaust this ground because the prosecutor committed misconduct at the evidentiary hearing and he would be barred from raising this claim in a successive Rule 3.850 motion.  Reply at 2.

It is axiom of federal habeas law that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001); see also Owen v. Sec'y for Dep't of Corr., 568 F.3d 894, 908 (11th Cir. 2006) (holding that a petitioner may overcome a procedural default by demonstrating "either (1) an adequate cause for and actual prejudice arising from the default, or (2) 'that a miscarriage of justice, caused by a substantial denial of constitutional rights, will occur' if the petitioner's federal claims are not considered." (quoting Lynd v. Terry, 470 F.3d 1308, 1313-14 (11th Cir. 2006)).

It is undisputed that Petitioner did not present to the State courts a claim of prosecutorial misconduct.  Petitioner has not shown cause and prejudice to excuse his default of this claim. Essentially, Petitioner challenges the prosecutor's veracity.  The credibility of the prosecutor, as a witness during the evidentiary hearing, was for the post conviction court to assess.  The post conviction court found the prosecutor's credible and found that the

prosecutor had revoked the plea offer and the revocation was communicated to trial counsel when trial counsel inquired into the status of the plea offer.  Those findings are presumptively correct, and Petitioner has the burden of proving by clear and convincing evidence that the state court's findings were an unreasonable determination fo the facts.  <u>Ward v. Hill</u>, 592 F.3d 1144, 1155–1156 (11th Cir. 2010)(citing 28 U.S.C. § 2254(e)(1)).

Consequently, the Court finds that Ground Six is unexhausted and procedurally barred.  In the alternative, the Court finds the ground without merit.

THEREFORE, it is now

**ORDERED:**

1.   Grounds Four and Six of the Petition for Writ of Habeas Corpus are **DISMISSED** as unexhausted and procedurally barred, and in the alternative **DENIED.**   Grounds One, Two, Three and Five are **DENIED.**

2.   The Clerk of the Court shall enter judgment accordingly; terminate any pending motions; and close this file.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).   Rather, a

district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this __9th__ day of April, 2013.

JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record